718 39 NEW YORK SUPPLEMENT. (Sup. Ct.

dence against the presumptions contained in the record, which would have been effectually destroyed by the verdict found. On the other hand, if the defendants were surprised, they should have accepted the offer made by the court at the trial to permit the withdrawal of a juror on terms, to the end that the answer might have been amended and the issue squarely and intelligently met.

The point raised as to the assignment of the cause of action by the foreign executor is without force. The transfer was legally made, and the assignee had the right to sue thereon in this state. Carpenter v. Butler, 29 Hun, 251.

If these reasons are sound, no error was committed, and the motion for a new trial must be denied.

---

In re EISNER'S ESTATE.

(Supreme Court, Appellate Division, First Department. June 5, 1896.)

EXECUTORS—JOINT CUSTODY OF FUNDS—DISCRETION OF SURROGATE.
  An order of the surrogate, under authority of Code Civ. Proc. § 2602, granting to executors joint custody and control of the funds of the estate, will not be disturbed, except for clear abuse of his discretion.

Appeal from surrogate's court, New York county.

Application by Julius H. Eisner and Joseph Stern, executors and trustees of Eliza Eisner, deceased, for removal of Mark H. Eisner, another executor and trustee of deceased, from his office; and application by Mark H. Eisner for joint control and custody of the funds of the estate. From orders denying the first application and granting the second application, Julius H. Eisner and Joseph Stern appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, and O'BRIEN, JJ.

Burton N. Harrison, for appellants.
George W. Carr, for respondents.

BARRETT, J. Upon a careful examination of the record, we see no reason to disturb the decision of the learned surrogate declining to remove Mark H. Eisner from his position as trustee under the will of the decedent, Eliza Eisner. There was a sharp conflict in the affidavits presented to the surrogate upon the question of the fitness of Mr. Eisner to serve. In view of the violence of the attack upon him, it is remarkable that no such motion has ever been made before, although the decedent's will was probated in 1885. Nor was the present motion made until Mr. Eisner petitioned the court for leave to exercise a joint control with the other trustees of the funds of the estate. It is said that, as long as Mr. Eisner was content to remain quiet, nothing was done. Mr. Eisner says that he consented at the outset that the funds should be subject to the order of the other two trustees alone, because one of the beneficiaries of the estate claimed that he owed it money, and he was desirous of allaying all suspicion. He strenuously denies, however, that he took no

part in the affairs of the estate; and, though there is much dispute on the point, the proof seems to preponderate in his favor. He specifies the duties he performed, which were extensive and important; and the attorney for the estate (now his personal attorney), whose knowledge was probably greater than that of any one else, corroborates him fully. Concededly, he joined in all the accountings, and received his commissions regularly. In view of this participation, the delay in making the motion to remove him is not satisfactorily explained. Thus the allegation of drunkenness, improvidence, and mental incapacity come with a rather bad grace at this late day. Nor are they by any means made out by cogent and convincing proof. The charges made are of the most general nature, and relate almost exclusively to the past. A physician under whose care Mr. Eisner seems to have been for a brief period makes allegations derogatory to his patient. His views, however, are based wholly on Mr. Eisner's condition in 1892, when he went to Europe for his health. The doctor makes the surprising assertion that, from such knowledge of his patient's condition at that time, he believes "it impossible that either his mental or physical constitution can have sufficiently recovered, and become normal, as to capacitate him for the present or future discharge of such duties as must be devolved by the business of a trust such as that to which he was appointed in the will of Eliza Eisner, deceased." Another affiant states what he claims was Mr. Eisner's condition in 1891, and says: "And I am not aware that any change has taken place in either his mental, physical, or moral character. Certainly, there has none for the better." Against such affidavits, unsatisfactory as to the past, and quite unreliable as to the present, Mr. Eisner presents affidavits from his present physician, his cousin and partner, his attorney, and the husbands of two of his nieces. These may be considered to be a vindication on all the charges made. We are quite satisfied with the decision of the learned surrogate, and the views which he gives in his opinion in support of that decision.

With regard to the second order, which directs joint control of the funds of the estate, we have reached the same result. That order was within the discretion of the surrogate (Code Civ. Proc. § 2602), and that discretion has certainly not been abused. In Re Adler, 60 Hun, 481, 15 N. Y. Supp. 227, the surrogate declined to give the direction, and his order was affirmed. It was held that the appellate branch of the supreme court would not interfere with the surrogate's discretion, whether favorable or unfavorable to the application, unless the applicant could show that the discretion had been abused. The court there pointed out the distinction between the review of the discretion exercised by the special term of our own court, and an appeal to us from an independent tribunal. It is true that it was intimated that the applicant must make out a case calling for the surrogate's interference, and showing that the protection of his rights and interests, or the rights and interests of others, required the favorable exercise of the discretion conferred. It was not thereby intended, however, to lay down any hard and fast rule by which the surrogate should be governed in dealing with such applications.

It may not be a matter of course, as was there said, to require the joint deposit. But it is for the surrogate to say what facts suffice to call for the exercise of his discretion. It would certainly require very special, and indeed most unusual, circumstances, to warrant this court in holding that a discretion favorable to the joint control of funds of an estate by all the executors was a violation of justice, and amounted to a reversible abuse. In Re Delaplaine, 19 Abb. N. C. 413, Surrogate Rollins examined the section of the Code in question with great care, reviewing the authorities prior to this new enactment. His conclusion was that "the occasion for enforcing a joint custody is found to have arisen whenever the circumstances are such that joint custody, pursuant to an agreement of the executors themselves, would commend itself to the surrogate as suitable and wise." This seems to be a sensible rule, and, following it, the surrogate, in the case at bar, properly directed the joint custody. There is no good reason why this executor should not have the same voice and control as his co-executors. He owes his appointment to the testatrix, who intrusted executorial duties to him quite as much as to the others. That he should desire his proper and equal share of the power and responsibility incident to those duties, is surely commendable. It is no reason for depriving him of the effective exercise of the authority conferred upon him that he is not liked by his co-executors and certain of the beneficiaries under the will. The charges against him having failed, the present question was determined upon its inherent merits, the applicant being treated as an executor of normal character and capacity. Upon the facts with regard to the applicant's relation to the estate, and considering all that has transpired since his appointment, the surrogate could not well have refused his application, although we do not mean to say that even such refusal would have been deemed an abuse of discretion. In whatever way the discretion might have been exercised, upon these facts, we could not properly have interfered therewith. We think, however, that the discretion of joint control was, under all the circumstances, the wisest and fairest exercise of the discretion conferred upon the surrogate by the statute. Each of the orders appealed from should therefore be affirmed, with costs. All concur.